NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0776n.06

No. 12-4064

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

FILED
Aug 21, 2013
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MARY I. MCKINLEY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| SKYLINE CHILI, INC., | ) | OHIO |
| | ) | |
| Defendant-Appellee. | ) | |

---

**Before: BOGGS and SURHEINRICH, Circuit Judges; MURPHY, District Judge.**[*]

**STEPHEN J. MURPHY, III, District Judge**. Mary McKinley filed suit against her former employer, Skyline Chili, Inc., ("Skyline"), alleging that Skyline discriminated against her on the basis of her age and gender, and that it terminated her employment in retaliation for complaining about this discrimination. She sought relief under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a) ("ADEA"), Ohio Revised Code Chapter 4112, O.R.C. § 4112, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). The district court granted Skyline's motion for summary judgment, finding that McKinley could not establish a prima facie case of retaliation under the ADEA or Title VII and could not establish that Skyline's proffered reason for her termination was pretext for unlawful discrimination. McKinley appeals this decision.

The Equal Employment Opportunity Commission ("EEOC") filed an amicus curiae brief in support of McKinley. It argues that the district court erred when it held that McKinley's complaint

---

[*]The Honorable Stephen J. Murphy, III, United States District Judge for the Eastern District of Michigan, sitting by designation.

to her human-resources manager regarding disparate discipline based on her age and gender was not sufficiently specific to constitute protected activity, and when it found that McKinley failed to create a triable issue of pretext. Because we find that McKinley failed to establish that Skyline's proffered reason for her termination was pretext for unlawful discrimination, we **AFFIRM**.

I.

McKinley, a female born in 1954, began working for Skyline as a district manager in 2006. After receiving positive performance reviews, she was promoted in March 2008 to the position of market manager for the Cincinnati market. During her tenure with Skyline, McKinley reported to Senior Vice-President of Restaurant Operations, Deborah Chitwood, a female born in 1957. McKinley does not complain of any wrongful treatment by her employer prior to her promotion. But after her promotion, Chitwood began finding deficiencies in McKinley's work. For example, in November 2008, Chitwood gave McKinley a performance evaluation that recognized several positive areas but also noted areas needing improvement. Areas needing improvement included the number of customer complaints from McKinley's stores, McKinley's slow response time to these complaints, and McKinley's communication with store managers. Chitwood again raised concerns regarding timely responses to customer complaints in an April 24, 2009 e-mail. Then, in McKinley's December 2009 performance evaluation, Chitwood noted that McKinley "struggled in her leadership effectiveness" as the Cincinnati market manager. On May 12, 2010, Chitwood forwarded a customer complaint email to McKinley and stated her concerns regarding continued customer complaints and low satisfaction scores at one of McKinley's stores. Chitwood forwarded this communication to Shari Bleuer, Director of Human Resources, to place in McKinley's personnel file. Additionally, on May 11, 2010, Shauna Webster, Skyline's senior financial analyst, advised Chitwood that McKinley had

2

not submitted timely quarterly audit reports for three of her direct-report stores. After these incidents, McKinley met with Chitwood and Bleuer on May 25, 2010, and Chitwood gave McKinley a letter outlining deficiencies in her performance. These deficiencies included her inability to successfully partner with the management team at one of her stores, lack of professionalism, lack of responsiveness to customer complaints, and poor financial results.

McKinley disputes that there were any deficiencies in her work or store performance. According to McKinley, Chitwood had a plan "to place male and significantly younger individuals in the higher level management positions in the Cincinnati market." To further this plan, she hired Mario Nocero as a district manager in Cincinnati and sought to place Jay Swallow in the Director of Operations position over the Cincinnati and Dayton markets. Swallow and Nocero are both males who are significantly younger than McKinley. McKinley contends that it is because of this plan that "Chitwood trumped up a number of false and/or silly performance issues and presented them in writing to McKinley on May 25, 2010."

McKinley complained to Bleuer after the May 25th meeting that "she was the only person being held accountable for customer complaints and her counterparts, all of whom were significantly younger, and some of whom were male, were not being held accountable." She claims she went to Bleuer again a few days later and Bleuer told her not to complain about Chitwood. McKinley further claims that on September 2, 2010, as part of the plan to promote younger males, Chitwood informed McKinley that she was being demoted to a district manager position and that Nocero would be promoted to her market manager position. The plan was "partially foiled," according to McKinley, because Nocero resigned the following day. Chitwood denies telling McKinley she would be demoted.

In November 2010, Swallow was promoted to Director of Operations of the Cincinnati and Dayton markets. McKinley submits this was also part of Skyline's discriminatory plan because her stores were more profitable and because everyone in management who worked with her believed she was more qualified than Swallow for the position. Around this same time, a Skyline employee, Robert Oehler, complained to Swallow and Bleuer about McKinley's handling of his promotion from shift manager to an assistant general manager position. He was upset that his promotion had been delayed and that, although McKinley had allegedly promised him a salary in the $32,000 to $35,000 range, his actual promotion salary was only $27,000. Skyline submits that this employee complaint coupled with McKinley's prior and ongoing performance issues, caused Chitwood to terminate McKinley's employment with Skyline on December 1, 2010. McKinley denies she had any performance deficiencies and argues that the real reason Skyline terminated her employment was because she is an older female and Skyline wanted to replace her with a younger male. She filed suit in the Southern District of Ohio July 21, 2011. The district court was unpersuaded by her arguments and entered judgment in favor of Skyline on August 14, 2010.

II.

We review the district court's grant of summary judgment de novo. *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000) (en banc). Summary judgment is proper when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 560 (6th Cir. 2004). The court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

4

III.

A.

McKinley brings her age and sex discrimination claims under both Ohio state and federal law. Her state claims are analyzed under the same framework as her federal claims. *See Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) ("Age discrimination claims brought under the Ohio statute are 'analyzed under the same standards as federal claims brought under the [ADEA].'") (alteration in original; citation omitted); *see also Shoemaker-Stephen v. Montgomery Cnty. Bd. of Comm'rs*, 262 F. Supp. 2d 866, 874 (S.D. Ohio 2003) ("Title VII prohibits an employer from discriminating against an employee, with respect to the terms, conditions, and privileges of one's employment, on the basis of sex. Ohio Rev. Code § 4112.02(A) prohibits the same conduct as a matter of State law, and is generally construed in identical fashion to Title VII.") (citations omitted).

The ADEA prohibits employers from discharging employees forty years of age or older on the basis of age. *See* 29 U.S.C. § 623(a). An employee claiming to have suffered unlawful age discrimination may establish a claim by offering either direct or circumstantial evidence. *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997). McKinley does not offer any direct evidence of discrimination. When a plaintiff seeks to establish an age discrimination case using circumstantial evidence, the *McDonnell Douglas* burden shifting framework applies. *Id.* This requires a plaintiff to "show that 1) she was a member of the protected class, 2) she was subject to an adverse employment action, 3) she was qualified for the position, and 4) she was replaced by someone outside the protected class." *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008) (citing *Kline,* 128 F.3d at 349). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its adverse business decision. *Id.*

5

If it does so, the burden shifts back to the plaintiff to demonstrate the reasons given were mere pretext. *Id.* at 410-11.

The district court found that McKinley established a prima facie case of age discrimination under the *McDonnell Douglas* framework. It then found that Skyline had produced a legitimate business reason for terminating McKinley: "her supervisor, Ms. Chitwood, lost confidence in Plaintiff's leadership abilities because, inter alia, her stores suffered loss of sales and profitability, Plaintiff consistently failed to timely follow up on customer complaints, she exhibited a lack of responsiveness to accounting, and she failed to timely file financial documents." Because Skyline carried its burden of producing a legitimate business reason for its decision to terminate McKinley, the district court recognized that the burden shifted back to McKinley to "proffer evidence sufficient for a reasonable jury to find, by a preponderance of the evidence, that Defendant's reasons for her termination were mere pretext and that, but for her age, Plaintiff would not have been terminated." The district court found that McKinley failed to establish pretext and, therefore, it entered judgment in Skyline's favor. McKinley challenges this finding.

B.

A plaintiff can demonstrate that an employer's proffered reasons are pretext for unlawful discrimination by showing that the reasons (1) had no basis in fact; (2) did not actually motivate the adverse employment action; or (3) were insufficient to motivate the employment action. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir. 2009). The third showing "ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even

6

though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Id.* To demonstrate that Skyline's proffered reasons had no basis in fact and were insufficient to motivate her termination, McKinley offered the testimony of district managers who worked with her, Heather Pressler, Mario Nocero, and Angela Hornsby, that she was better qualified than Jay Swallow for the Director of Operations position and was more qualified than Nocero for the market-manager position.

At the summary-judgment stage, a plaintiff must produce sufficient evidence from which a jury could reasonably reject the employer's explanation for its adverse employment decision. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). The district court found that this opinion testimony was insufficient to show pretext, noting that it was essentially speculation and lacked specific facts regarding Swallow's performance, including whether any of the testifying individuals had the opportunity to observe him or had any personal knowledge regarding his conduct or qualifications. McKinley and the EEOC argue that this finding was error. They point to Pressler's deposition testimony in particular because they claim she had personal knowledge regarding McKinley's job performance relative to other managers'. But Pressler only gave her general opinion that McKinley was a high performer based on her "care for her people, and financial results." She admitted that she could not give any specifics without consulting financial records. McKinley also suggests the performance issues addressed in the May 25, 2010 letter were resolved prior to her termination, but Bleuer testified to the contrary. When McKinley's counsel asked whether any of the issues in the letter were resolved, Bleuer responded that she did not believe they were resolved and that there were still "ongoing issues."

7

The district court correctly observed that the existence of differing opinions regarding the sufficiency of McKinley's performance does not create a genuine issue of material fact as to whether Skyline's stated reasons for terminating her employment masked impermissible discrimination. Rather, to defeat summary judgment, McKinley was required to "put forth evidence which demonstrates that [defendant] did not 'honestly believe' in the proffered non-discriminatory reason[s]" given for terminating her employment. *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001). McKinley failed to do so.

As to Swallow, the district court found that McKinley failed to show that he was similarly situated to her because she did not present any evidence showing that he engaged in the same conduct but was treated differently. Specifically, the district court found that McKinley did not produce evidence regarding any performance deficiencies on the part of Swallow or evidence that any difference in Skyline's treatment of these two individuals was the result of "anything other than a business decision based on months and years of job performance."

As to Nocero, the district court found that he was not similarly situated because he was a district manager and had different duties, pay, and bonus potential than McKinley had as a market manager. A plaintiff "[is] not required to demonstrate an exact correlation between himself and others similarly situated; rather, he ha[s] to show only that he and his proposed comparators were similar in all relevant respects and that he and his proposed comparators engaged in acts of comparable seriousness." *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 751 (6th Cir. 2012) (citation omitted). But even if Nocero could be considered comparable based on his job functions, McKinley has failed to show that either Nocero or Swallow engaged in acts of comparable seriousness and were not

8

terminated. Because McKinley did not present evidence that would allow a reasonable jury to conclude that Skyline's stated reasons for her termination were pretext for unlawful discrimination, judgment was appropriately entered in Skyline's favor.

C.

McKinley does not offer any direct evidence of retaliation. When a plaintiff presents only circumstantial evidence of retaliation, her claims are examined under the same *McDonnell Douglas* framework used to examine discrimination claims. *Spengler v. Worthington Cylinders*, 615 F.3d 481, 491 (6th Cir. 2010) (citing *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008)).

To establish a prima facie case of retaliation, a plaintiff must show that she (1) engaged in a protected activity; (2) the defendant knew plaintiff exercised this protected right; (3) the defendant took an adverse employment action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse employment action. *Id.* at 491-92 (citing *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir. 2007)). Just as with her discrimination claims, if McKinley establishes a prima facie case of retaliation,"the burden of production shifts to Defendant to 'articulate some legitimate, nondiscriminatory reason for [its action].' " *Id.* at 492 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If Skyline succeeds in doing so, the burden shifts back to McKinley to show the stated reasons were not the true reasons for her termination, but were pretext intended to mask retaliation. *Id.*

Plaintiff claims she engaged in a protected activity when, after receiving her May 25, 2010 letter from Chitwood outlining her performance deficiencies, she told Bleuer that she felt discriminated against and that "she was the only person being held accountable for customer

9

complaints and her counterparts, all of whom were significantly younger, and some of whom were male, were not being held accountable." The district court, relying on *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989), found that McKinley's complaint to Bleuer was too vague to constitute opposition and could not, therefore, be considered protected activity. In *Booker*, the court reviewed whether a letter the plaintiff sent to his employer's human-resources officer constituted a charge or complaint under Michigan's Elliott-Larsen Act, which tracks Title VII and is construed in the same manner. *Booker*, 879 F.2d at 1312. It found that the letter was not protected opposition to violation of the anti-discrimination laws because plaintiff "was not contesting any unlawful employment practice; he was contesting the correctness of a decision by his employer" and only generally alleged that the charges against him were the result of "ethnocism." *Id.* at 1313. The court held that "a vague charge of discrimination in an internal letter or memorandum is insufficient to constitute opposition to an unlawful employment practice." *Id.*

The EEOC and McKinley claim the district court erred when it determined her comments to Bleuer were too generalized to constitute a protected complaint of age and gender discrimination. The EEOC compares McKinley's complaint to Bleuer to the oral complaint the court deemed protected opposition in *Blizzard,* 698 F.3d at 288-89, and differentiates it from the complaint found insufficient in *Booker*. In *Blizzard*, the court held that a plaintiff's complaint that she was "treated differently than younger employees" distinguished her communication with her employer from other oral complaints and constituted protected activity. *Blizzard*, 698 F.3d at 288-89. Viewing the evidence in the light most favorable to McKinley, her comment that she was being treated differently than her younger and/or male co-workers could qualify as protected activity. But even assuming the district court erred in reaching the opposite conclusion, reversal is not required because the district court held that, even

10

if McKinley's complaint was a protected activity and she had established a causal connection between that complaint and her termination, her retaliation claims would still fail for the same reason her age and sex discrimination claims fail — she did not show that Defendant's reasons for her termination were pretexual. This is correct. Because, as we concluded above, McKinley failed to show that Skyline's proffered reasons for her termination were pretextual, McKinley cannot show that she was actually terminated in retaliation for the complaint she made to Bleuer six months prior to her discharge.

The EEOC submits that there is evidence of retaliatory animus on the part of Skyline which is sufficient to establish causation and constitutes evidence of pretext. This evidence is McKinley's testimony that "Bleuer told her 'it wasn't a good idea to go up against Debi Chitwood' because it could cost McKinley her job." But McKinley failed to show that Chitwood ever learned of her comments to Bleuer so that the comments could have formed the basis for Chitwood's decision to terminate her.

Additionally, the EEOC argues that McKinley's claims were inappropriate for summary judgment because evidence "of a specific plan in place to promote Nocero to manage the Cincinnati territory by late 2010 and his hire before or around December 2009 (without McKinley's knowledge or approval) — would permit a jury to find Skyline's reliance on performance problems documented only after Nocero's hire plainly suspect." But this speculation falls short of demonstrating pretext. It does not suggest that the reasons given for McKinley's termination had no basis in fact or were insufficient to motivate the decision. Thus, McKinley has failed to show the district court erred when it granted Skyline summary judgement on her retaliation claims.

For the foregoing reasons, the district court's judgment is **AFFIRMED**.