**NOT RECOMMENDED FOR PUBLICATION**
File Name: 14a0476n.06

**No. 13-4355**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 02, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| J. PHILIP LAWROSKI, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | **ON APPEAL FROM THE** |
| | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT FOR THE** |
| NATIONWIDE MUTUAL INSURANCE | ) | **SOUTHERN DISTRICT OF** |
| COMPANY and LYNDA BUTLER, | ) | **OHIO** |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

**BEFORE:** BATCHELDER, Chief Judge; KEITH and STRANCH, Circuit Judges.

**ALICE M. BATCHELDER, Chief Judge.** Appellant J. Philip Lawroski filed this age discrimination case against Nationwide Mutual Insurance Company and its Chief Financial Officer of the Exclusive Channel Lynda Butler ("Nationwide"),[1] alleging that Nationwide discriminated against him on account of his age when it terminated him and failed to hire him for a new position. Because the district court found that no reasonable jury could find that Nationwide's legitimate business reasons for its actions were pretext for age discrimination, the district court granted Nationwide's motion for summary judgment as to Lawroski's disparate treatment claims. For the reasons set forth below, we AFFIRM the district court's judgment.

---

[1]Throughout this opinion, we refer to Appellees Nationwide Mutual Insurance Company and Lynda Butler collectively as "Nationwide." However, we also refer to Lynda Butler individually as "Butler" where necessary.

**I.**

Nationwide is a mutual insurance company that is headquartered in Columbus, Ohio, and sells property and casualty insurance, health insurance products, life and retirement savings products, and asset management products. On October 31, 1994, Nationwide hired Lawroski as a manager in the financial products department that supported Nationwide's Enterprise Chief Financial Officer ("CFO"). In early 2009, after serving in numerous different positions with Nationwide, Lawroski accepted a position as a Financial Business Director on projects for the company's Exclusive Channel, Independent Agent Channel, and High-Risk Auto Channel (Titan). Although Lawroski's position provided work from all three channels, he reported directly to the Exclusive Channel CFO, David Braun. The "Financial Business Director" ("FBD") title was commonly used in the Exclusive Channel, and in fact, four FBDs (including Lawroski) were listed as part of the channel on December 31, 2009.

In April 2009, Nationwide replaced Braun with Lynda Butler, who assumed the title Vice President of Finance and CFO of the Exclusive Channel. Also, a team reporting to Peter Rothermel became part of Butler's department. After this transition, Rothermel's team was responsible for providing financial support for staff sales operations, providing finance support for Nationwide's Distribution Excellence project, and creating and maintaining financial models used to compare investments. While reporting to Butler, Lawroski performed several tasks in relation to different projects corresponding to the three channels to which he was assigned. He worked on sponsor relations, several different distribution programs, financial modeling, and other work "for many different initiatives."

Lawroski's modeling projects were separate from those of Rothermel's team, except for the independent agency acquisition ("IAA") model to which both contributed. Dan Dolsky, a Senior Consultant on Rothermel's team, also worked on some modeling projects. Dolsky's role was functionally the same as that of an FBD, except that he did not supervise anyone. When Dolsky was terminated in April 2010 for performance reasons, his duties were assumed temporarily by Rothermel and two of his direct reports. Michael Ligas, a participant in Nationwide's Financial Leadership Rotation Program ("FLRP")[2], also assisted with Dolsky's former duties, as he began his six-month rotation with Rothermel's team in March 2010. One of Ligas' most important contributions during this FLRP rotation was his work on the "Lifetime Value Model," which Lawroski claims to have worked on at the same time.

In Lawroski's mid-year review, Butler noted that she was struggling to find projects to "match [Lawroski's] skills," and by August 2010, she determined that there was insufficient work for Lawroski to justify the cost of the position in her budget. At that time, Butler informed Lawroski that his position would be eliminated in 2011. Although she attempted to secure projects for Lawroski by reaching out to her peers, she was unsuccessful, and Lawroski's position was eliminated. Nationwide gave Lawroski 60 days to attempt to secure another position within the company.

In November 2010, Nationwide considered applicants to fill the vacancy on Rothermel's team created by Dolsky's termination. Lawroski, Ligas, and three others interviewed for the position. At the time of the interview, Ligas was one of only two interviewees under 40 years old. All five applicants were interviewed by Lee Sheeran, Rothermel, and Butler. Each

---

[2]Nationwide created the FLRP as a way to attract candidates from colleges and universities.

interviewer scored the applicants from 1 to 5 in a number of categories (*e.g.*, professional presentation, technical proficiency, etc.) and they tallied these scores to rank the applicants.[3] Every interviewer ranked Ligas as first, and no interviewer ranked Lawroski as first or second.

On November 17, 2010, Rothermel offered the position to Ligas, who was 34 years old at the time. He began work as an FBD on Rothermel's team on December 27, 2010. In Rothermel's announcement to the team regarding Ligas' new position, Rothermel explained that Ligas would "lead the modeling and analysis within [Rothermel's] team, focusing on lifetime value, distribution economics and ROI, Distribution Excellence, Maximizing Customer Equity, marketing ROI, and acquisition funnel efficiency, among other things."

Because Lawroski was unable to secure a new position within the 60-day period, his employment was terminated on April 16, 2011. In Butler's paperwork with Human Resources, she explained that Lawroski's "[p]osition [was] a 'special projects' role for which there [was] only a limited number of projects that need[ed] support," and that eliminating his position saved expenses. Upon his termination, Lawroski transferred several remaining projects to Eric Ryan, who worked outside of the Exclusive Channel. Lawroski suggested that several of his on-going projects in different finance departments outside of the Exclusive Channel were transferred to other individuals within those finance departments after his termination.

On December 1, 2011, Lawroski instituted this action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a), and the Ohio Revised Code 4112, alleging that Nationwide terminated him and failed to award him the FBD position on Rothermel's team

---

[3]For reasons unknown, Butler did not score any of the applicants in the categories of technical proficiency, cross-departmental management, or direct management. She tallied the scores in the remaining categories to rank the applicants.

because of his age,[4] and asserting claims of disparate treatment and disparate impact. On November 1, 2013, the district court granted Nationwide's motion for summary judgment on all of Lawroski's claims. Lawroski now appeals that decision regarding only his disparate treatment claims.

**II.**

We review *de novo* a district court's grant of summary judgment. *In re Southeastern Milk Antitrust Litigation*, 739 F.3d 262, 270 (6th Cir. 2014). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted). Thus, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 248. In evaluating a summary judgment motion, we consider the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Lawroski has alleged two disparate treatment claims – termination and failure to hire – in violation of the ADEA and Ohio's analogous civil rights statute. The analysis of a claim under the ADEA basically parallels that of a claim under the Ohio Revised Code. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 357 (6th Cir. 1998). The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate

---

[4]Specifically, Lawroski brought his ADEA claims against Nationwide only, and he brought his Ohio state claims against both Nationwide and Butler.

against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1).

A plaintiff bringing an ADEA claim must prove, by preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action. *Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 177-78 (2009). Although a plaintiff may use direct or circumstantial evidence to establish "but for" causation, courts apply a burden-shifting framework to cases wherein the plaintiff has presented only circumstantial evidence. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Under the *McDonnell Douglas* burden-shifting paradigm, it is the plaintiff's burden to establish a *prima facie* case of discrimination. *Id.* at 802. "Once the *prima facie* case is made, a defendant may offer any legitimate, non-discriminatory reason for the employment action, which the plaintiff may rebut by evidence of pretext; however, the burden of proof always remains with the plaintiff." *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996). Because Lawroski has presented only circumstantial or indirect evidence to support his disparate treatment claims, the *McDonnell Douglas* burden-shifting paradigm applies.

## A.    Prima Facie Case

"[T]o establish a *prima facie* case of discrimination by the defendant, the plaintiff must show (1) that he is a member of a protected group, (2) that he was subject to an adverse employment decision, (3) that he was qualified for the position, and (4) that he was replaced by a person outside of the protected class . . . [or] that similarly situated non-protected employees were treated more favorably." *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002) (internal quotation marks omitted). If the employer's adverse action arises as part of a reduction

in force ("RIF"), the plaintiff must provide "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990).

> "A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge." A person is considered replaced "only when another employee is hired or reassigned to perform the plaintiff's duties." A person is not considered replaced when his duties are absorbed by another person "or when the work is redistributed among other existing employees already performing related work."

*Geiger v. Tower Auto*, 579 F.3d 614, 623 (6th Cir. 2009) (quoting *Barnes*, 896 F.2d at 1465). In a RIF situation, "the most common legitimate reason for the discharge is the RIF itself." *Brocklehurst v. PPG Indus., Inc.*, 123 F.3d 890, 896 (6th Cir. 1997). Because the RIF situation here provided a legitimate reason for Nationwide's adverse actions toward Lawroski, Lawroski must show not only that he was replaced or that others were treated more favorably, but also that Nationwide singled him out for discharge for impermissible reasons. *See Barnes*, 896 F.2d at 1464-66. The district court assumed *arguendo* that Lawroski had established a *prima facie* case of age discrimination, and proceeded directly to the question of pretext. We will take the same approach.

### B. Legitimate Nondiscriminatory Reasons and Pretext

Assuming Lawroski has established a *prima facie* case for his disparate treatment claims, Nationwide is entitled to summary judgment because Nationwide has articulated legitimate business reasons for terminating Lawroski's employment and declining to hire him for a different position and Lawroski has not shown those reasons to be pretext for age discrimination. *See Hartsel*, 87 F.3d at 800. Nationwide stated that it terminated Lawroski due to both lack of

work and potential cost savings to Butler's department. Nationwide also explained that it did not hire Lawrowski for the FBD position in Rothermel's group because of the low scores Lawroski received throughout the interview process, as well as Rothermel's negative impression of Lawroski. Nationwide's reasons are legitimate and nondiscriminatory; Lawroski therefore bears the burden to show that they are merely pretext for age discrimination. *See Hartsel*, 87 F.3d at 800.

"[A] plaintiff can show pretext in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). To defeat summary judgment, the plaintiff "must produce sufficient evidence from which a jury could reasonably reject [the defendant's] explanation of why [it] fired h[im]." *Id.* "[A]t bottom the question is always whether the employer made up its stated reason to conceal intentional discrimination." *Id.* at 400 n.4.

### 1. First Type of Rebuttal

The first type of rebuttal of pretext – that the proffered reasons had no basis in fact – generally "consists of evidence that the reasons given by the employer simply did not happen." *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 471 (6th Cir. 2002). Although Lawroski does not challenge the reasons given for Ligas' hire as factually false, he does challenge the reasons given for his own termination as factually false. Specifically, he avers that there was sufficient work for him to do, but that work was transferred to Ligas. Lawroski attempts to show that Ligas was not hired to replace Dolsky, but rather, to replace Lawroski. However, the record supports Nationwide's claim that Ligas took over Dolsky's modeling work. Dolsky's Senior Consultant

position was functionally the same as an FBD position, except that the latter position also supervised at least one other employee. Although Lawroski claims that Dolsky's modeling work, particularly the Distribution Excellence ("DE") model, was actually Lawroski's work, the record does not support this claim because, in a performance review, the DE model was listed as Dolsky's work, and Lawroski admitted that during the same period he was working on several other projects.

Lawroski also asserts that his termination did not achieve cost savings because the number of FBDs in Butler's department was not reduced. The record clearly shows, however, that in the year following Lawroski's termination, the number of employees in Butler's department was reduced from 26 to 22, and the number of FBDs fell from three to two. Thus, none of the evidence presented by Lawroski provides a basis for a reasonable inference that Nationwide's explanations for Lawroski's termination were false.

### 2. *Third Type of Rebuttal*

We next address the third type of rebuttal of pretext, as it bears striking similarities to the first type. Like the first type, it "is a direct attack on the credibility of the employer's proffered motivation for taking the adverse action against the plaintiff." *Gulley v. Cnty. of Oakland*, 496 F. App'x 603, 610 (6th Cir. 2012). To show that a defendant's reasons for subjecting an employee to an adverse action were insufficient to motivate that action, the plaintiff normally offers "evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *McKinley v. Skyline Chili, Inc.*, 534 F. App'x 461, 465 (6th Cir. 2013) (internal quotation marks omitted). Lawroski contends that Ligas was similarly

situated to himself, and that Nationwide treated Ligas more favorably when it decided to hire Ligas instead of Lawroski. But the record shows that Lawroski and Ligas were not similarly situated; Ligas was the highest rated of the five interviewees, whereas Lawroski was the lowest rated. Additionally, Ligas' resume demonstrates that he was qualified for the FBD position, and Ligas was hired according to the FLRP guidelines.

Lawroski also avers that Nationwide's reasons for his termination were insufficient to motivate his discharge because he had sufficient work, his work was transferred to Ligas, and his termination did not achieve cost savings. But the record does not support these inferences either, particularly because it is undisputed that Lawroski worked as a shared resource for three separate channels, whereas Ligas was hired to work only for the Exclusive Channel, and no one was hired as a shared resource for the three channels after Lawroski's termination. Thus, none of the evidence presented by Lawroski provides a basis for a reasonable inference that Nationwide's explanations of why it terminated Lawroski were insufficient to motivate its adverse actions toward Lawroski.

### 3. *Second Type of Rebuttal*

Finally, the second type of rebuttal of pretext – that a defendant's proffered reasons did not actually motivate its action – "is of an entirely different ilk" than the other types. *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 396 (6th Cir. 2008) (internal quotation marks omitted). Any endeavor to establish this type of rebuttal is based upon an admission of "the factual basis underlying the employer's proffered explanation and further [admission] that [those facts] *could* motivate" the adverse employment action. *Mischer v. Erie Housing Auth.*, 168 F. App'x 709, 715 (6th Cir. 2006) (internal quotation marks omitted). To attempt to "indict the credibility of

the employer's explanation," the plaintiff normally offers circumstantial evidence that "tend[s] to prove that an illegal motivation was *more* likely than that offered by the defendant." *Id.* (internal quotation marks omitted).

Lawroski avers that many different pieces of circumstantial evidence in the record show that his age was the more likely motivation for Nationwide's failure to hire him, rather than Nationwide's explanation that Ligas was more qualified for the position. Specifically, he contends that he was not chosen for the position because he was the oldest interviewee, the cost of his pension benefits was high, and Butler was attempting to assemble a younger workforce. Although Lawroski was the oldest interviewee, he was one of three interviewees over age 40, while the other two interviewees were under age 40. That Ligas was selected from a pool of applicants of various ages does not show intentional age discrimination. *See Mischer*, 168 F. App'x at 715. Moreover, the costs of Lawroski's pension were not tied to his age, but rather to his salary, and Ligas was hired at the same salary range as Lawroski's. And Lawroski's allegations regarding Butler's motivations in assembling a younger workforce do not provide anything from which a reasonable jury could infer age animus because Butler's department continued to employ individuals much older than Lawroski and very few individuals under the age of 40.

Lawroski further argues that Ligas was not qualified for the FBD position and that Ligas did not fulfill the requirements of the FLRP. But the evidence upon which Lawroski relies shows that Ligas had the ten years of experience in accounting, finance, insurance, or administrative business functions required for the FBD position. And Ligas completed the FLRP in accordance with its guidelines. Because Ligas was in his third and final FLRP rotation when

he applied for and was offered the FBD position, his hiring process was not improper. Thus, none of the circumstantial evidence presented by Lawroski tends to show that Nationwide had an improper motive for failing to hire him for the FBD position.

Lawroski also avers that many different pieces of circumstantial evidence in the record show that his age was the more likely motivation for his termination, rather than Nationwide's explanation that there was insufficient work to justify the costs of Lawroski's position. Specifically, he asserts that his work was transferred to Ligas, and therefore, his position was not eliminated as part of a reduction in force. Although Lawroski has introduced evidence showing slight similarities between his work and Ligas' work, he has not produced evidence from which a reasonable jury could infer it was the *same* work. Lawroski was hired as a shared resource for three separate channels, whereas Ligas was hired as a resource for *only* the Exclusive Channel. That Ligas worked on projects with titles similar to those of Lawroski's projects with the other two channels does not show that they were the *same* projects.

For example, Rothermel's group was involved in a project for the Independent Agent channel, specifically, purchasing independent agents and converting them to exclusive agents (the "IAA model" project). Ligas was involved in this project during his rotation in Rothermel's group and after his hire as FBD. But the fact that Ligas' channel occasionally interacted with other channels does not mean that he worked as a *shared resource* for those channels. Although Lawroski too was involved in the IAA model project, his position also required him to work on other projects for the Independent Agent channel, whereas Ligas' position did not. Lawroski ignores this essential difference between the two positions.

Moreover, the record supports Nationwide's legitimate business reason for terminating Lawroski – that it needed to reduce its workforce. In the year following Lawroski's termination, the employees in Butler's department were reduced from 26 to 22, and the number of FBDs fell from three to two. "It is not the prerogative of courts to engage in post-hoc management of the employer's internal affairs by second-guessing how personnel could have been more equitably allotted, or cost-savings better realized." *Norbuta v. Loctite Corp.*, 1 F. App'x 305, 314 (6th Cir. 2001). And the elimination of one or more positions is recognized as a sufficient, non-discriminatory reason for terminating employment. *See Barnes*, 896 F.2d at 1465. Thus, none of the circumstantial evidence presented by Lawroski has provided a basis upon which a reasonable jury could find that Nationwide had an improper motive for terminating him.

Lawroski has failed to produce sufficient evidence from which a jury could reasonably reject Nationwide's reasons for its adverse actions toward him. Nationwide, therefore, is entitled to summary judgment. *See Chen*, 580 F.3d at 400; *Anderson*, 477 U.S. at 249-50.

**III.**

For the foregoing reasons, we **AFFIRM** the judgment of the district court.